IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy N. Prokop, :
             Petitioner :
              :   No.  603 C.D. 2016
          v. :
              :   Submitted: December 2, 2016
Unemployment Compensation :
Board of Review, :
             Respondent :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: April 19, 2017


        Jeremy N. Prokop (Claimant) petitions *pro se* for review of the March 16, 2016 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision dismissing Claimant's appeal as untimely pursuant to section 501(e) of the Unemployment Compensation Law (Law).[1]

        The underlying facts of this case are not in dispute and are garnered from the original record. Claimant was employed by the Pennsylvania Department of Conservation and Natural Resources' Bureau of Forestry (Employer) since May 2008 as a semi-skilled laborer. His position was full-time, but seasonal. He last worked

---

[1] Section 501(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §821(e).

for Employer on November 14, 2015, at which time Employer provided him with a letter advising that he would be called back to work in March of 2016. On November 16, 2015, as he did for the previous seven years, Claimant filed an application for unemployment compensation benefits with the Pennsylvania Department of Labor and Industry (Department). (Record at Item No. 3.) The Department issued Claimant the Pennsylvania Unemployment Compensation Handbook (UC Handbook), which explains the requirement to register for employment search services offered by the Pennsylvania CareerLink system at www.jobgateway.pa.gov within 30 days after filing an application for benefits and cautions that failure to register could result in a denial of benefits. *Id.* By letter dated December 7, 2015, the Department advised Claimant that it had been more than 21 days since he filed his application for benefits and that he had not registered with the CareerLink system website.[2] (Record at Item No. 2.) This letter also advised Claimant that he will lose his benefits unless he registers with the website within the 30-day period. *Id.* Further, this letter noted exemptions to the registration requirement, including if Claimant had written notice from his employer of a specified date to return to work. *Id.*

Claimant failed to register and by notice of determination mailed December 21, 2015, the Department advised Claimant that he was disqualified from receiving benefits for the week ending December 19, 2015, and continuing thereafter, in accordance with section 401(b)(1)(i) of the Unemployment Compensation Law (Law)[3] and section 65.11(c) of its regulations, 34 Pa. Code §65.11(c).[4] (Record at

---

[2] This registration requirement only became effective in 2011.

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §801(b)(1)(i). This section requires a claimant to actively search for suitable employment and includes as a requirement for this active search that the claimant register for employment search **(Footnote continued on next page…)**

Item No. 3.) The notice of determination stated that the last day to file a timely appeal was January 5, 2016. *Id.* However, Claimant did not file his appeal until January 20, 2016.[5] In his appeal, Claimant noted that he was a seasonal employee for the past eight years, that he included a call back date on his application for benefits, and that the UC Handbook expressly exempts a person with a call back date from the registration requirement. (Record at Item No. 4.)

The referee held a single-party hearing on February 11, 2016. Claimant testified regarding his full-time, but seasonal employment with Employer as a semi-skilled laborer. Claimant stated that he last worked for Employer on November 14, 2015. Claimant noted that he received a letter from Employer dated September 14, 2015, which he submitted into evidence, notifying him that he would be placed on leave without pay starting November 14, 2015, with an anticipated return to work during the pay period beginning March 5, 2016. (Notes of Testimony (N.T.), 2/11/16, at 9-10.)

Claimant stated that he filed an online application for benefits on November 16, 2015, and indicated that he had a specific return to work date.

**(continued…)**

services with the CareerLink system website within 30 days after filing his initial application for benefits.

[4] Section 65.11(c) of the Department's regulations reiterates the registration requirement set forth in section 401(b)(1)(i) of the Law and further states that failure to register will render the claimant ineligible for benefits "for any week that ends more than 30 days after the claimant files his application for benefits unless the claimant registers by Sunday of that week." 34 Pa. Code §65.11(c).

[5] In his brief, Claimant notes that he immediately registered on the website that same day. Hence, he was seeking benefits only for claim weeks ending December 19 and 26, and January 2, 9, and 16. (Claimant's brief at 4-5.)

Claimant confirmed his mailing address and admitted to receiving his claim confirmation letter, notice of financial determination, and the UC Handbook. Claimant identified and submitted copies of pages 7 and 8 of the UC Handbook which state that a claimant is exempt from the website registration requirement if the employer has advised, in writing, that the claimant will return to work on a specific date. Claimant also admitted to receiving the Department's December 7, 2015 letter, but noted that the letter included the same registration exemption as the handbook. Claimant, however, denied ever receiving a copy of the Department's December 21, 2015 notice of determination. Instead, Claimant testified that he learned of the same only after calling his local service center to inquire why his benefits had stopped. (N.T., 2/11/16, at 10-12.)

Claimant testified that he was advised by a representative at the local service center that his benefits were stopped due to his failure to register on the website but that they would resume as soon as he registered. Claimant then registered with the website on January 15, 2016. Claimant stated that the local service center representative also advised him to file an appeal, which he did on January 20, 2016. Claimant noted that he had problems with his mail but never followed up with the postal authorities. Claimant's mother testified that Claimant lives with her and also stated that they have problems with the mail, but she too admitted that she never contacted the postal authorities regarding the same. (N.T., 2/11/16, at 12-15.)

By decision mailed February 12, 2016, the referee dismissed Claimant's appeal as untimely pursuant to section 501(e) of the Law. The referee found as fact that the Department's December 21, 2015 notice of determination was mailed to Claimant's last known address and was not returned as undeliverable, that the last day

4

to appeal this determination was January 5, 2016, and that Claimant's appeal was not filed until January 20, 2016. Further, the referee found that Claimant was not misinformed nor in any way misled regarding the right of, or need to, appeal.

Claimant appealed to the Board, again alleging that he never received the Department's December 21, 2015 notice of determination and, in any event, he was exempt from the registration requirement because he had a specific call back date in writing. The Board, however, affirmed the referee's determination, adopting and incorporating the referee's findings and conclusions. The Board noted that the Department's determination was mailed to Claimant's correct address and not returned as undeliverable, thereby presuming receipt. Additionally, the Board specifically discredited Claimant's assertion of non-receipt.

On appeal to this Court,[6] Claimant argues that the Board erred in affirming the dismissal of his appeal as untimely because he was exempt from registering with the CareerLink system website and should never have been disqualified in the first place. The Board responds by asserting that its finding of a late appeal is binding because Claimant did not challenge the same and that Claimant's late appeal was unjustified because it was not caused by fraud, administrative breakdown, or non-negligent conduct.

In pertinent part, section 501(e) of the Law provides that an appeal from a notice of eligibility determination must be filed "within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post

---

[6] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Torres-Bobe v. Unemployment Compensation Board of Review*, 125 A.3d 122, 126 n.3 (Pa. Cmwlth. 2015).

5

office address." 43 P.S. §821(e). If an appeal is not filed within fifteen days of mailing, the determination becomes final and the Board is without jurisdiction to consider the matter. *Roman-Hutchinson v. Unemployment Compensation Board of Review*, 972 A.2d 1286, 1288 n.1 (Pa. Cmwlth. 2009).

When notice is mailed to a claimant's last known address and not returned by the postal authorities as undeliverable, the claimant is presumed to have received it and, absent extraordinary circumstances, is barred from filing an untimely appeal. *Mihelic v. Unemployment Compensation Board of Review*, 399 A.2d 825, 827 (Pa. Cmwlth. 1979). The presumption of receipt "is based on the notion that, once the notice, properly addressed, is placed in the mail, there are usually two options: either the notice will be delivered as addressed, or, if it cannot be delivered, it will be returned to the sender." *Volk v. Unemployment Compensation Board of Review*, 49 A.3d 38, 41 (Pa. Cmwlth. 2012) (en banc). "Although those two options are the most likely to occur in our experience, there are occasions in which mail is lost or not delivered for some reason." *Id.*

However, if certain requirements are established, a party may proceed *nunc pro tunc*, or "now for then," with an untimely appeal. *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008). "An appeal *nunc pro tunc* may be permitted when a delay in filing the appeal is caused by extraordinary circumstances involving fraud, administrative breakdown, or non-negligent conduct, either by a third party or by the appellant." *Mountain Home Beagle Media v. Unemployment Compensation Board of Review*, 955 A.2d 484, 487 (Pa. Cmwlth. 2008). Our Pennsylvania Supreme Court has explained that an administrative breakdown occurs "where an administrative board or body is

6

negligent, acts improperly or unintentionally misleads a party." *Union Electric Corporation v. Board of Property Assessment*, 746 A.2d 581, 584 (Pa. 2000).

In *Union Electric Corporation*, our Supreme Court reversed an order of this Court affirming a common pleas court order quashing the tax assessment appeals filed by Union Electric Corporation and Kohn, Inc. (appellants) as untimely and refusing to accept the appeals *nunc pro tunc*. In that case, the appellants received real estate assessment notices for their properties in January 1996. Pursuant to the applicable statute, any appeals from these assessment notices had to be filed before the last day of February 1996. However, on February 13, 1996, the Allegheny County Board of Property Assessment, Appeals and Review (County Board) issued an order extending the time for such filing until April 1, 1996. Appellants filed their appeals on March 27, 1996, the County Board held hearings, and appellants received reductions. Nevertheless, appellants separately appealed those decisions to the common pleas court.

The City of Pittsburgh School District thereafter filed motions to quash asserting that appellants' initial appeals were filed beyond the statutory deadline and that the County Board had no authority to extend the same. In response, appellants argued that at the very least their appeals should be heard *nunc pro tunc*. The common pleas court disagreed and granted the District's motions to quash. This Court affirmed, holding that the common pleas court properly quashed the appeals because the County Board had no authority to extend the statutory deadline. However, our Supreme Court reversed, holding that the County Board's negligent action in extending the filing deadline constituted a breakdown in operations such that *nunc pro tunc* was warranted. The Supreme Court noted that while the County Board lacked the authority to extend the statutory deadline, it was "cloaked with the

7

apparent authority to extend the deadline because it was the governmental reviewing body before which the appeals were filed," appellants reasonably relied on this apparent authority and, in so doing, were misled by the County Board. *Id.* at 584.

This Court reached a similar result in *Walsh v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1248 C.D. 2013, filed May 13, 2013), an unreported opinion reversing the Board's order dismissing a claimant's appeal as untimely and denying *nunc pro tunc* relief.[7] In *Walsh*, the claimant obtained a part-time holiday job while receiving benefits. She reported her earnings from this part-time employment, which did not exceed her partial benefit credit. Following cessation of this job, the Altoona Service Center (Service Center) issued an errant notice of determination dated January 24, 2012, finding her ineligible for benefits. The claimant appealed that determination. As this appeal was pending, the Service Center issued an errant second notice of determination dated February 13, 2012, again finding her ineligible for benefits under section 402(b) of the Law, 43 P.S. §802(b), because she had voluntarily quit without cause of a necessitous and compelling nature. Four days later, on February 17, 2012, the claimant received a hearing notice with respect to her appeal of the first notice. The claimant did not appeal the second notice as she believed all issues would be resolved at the hearing.

Following a March 5, 2012 hearing, a referee reversed the first notice of determination and concluded that the claimant was eligible for benefits. In her decision, the referee addressed the issue of the claimant's failure to follow reporting requirements relating to wages (which apparently was the basis of the first notice), as

---

[7] Pursuant to Commonwealth Court Internal Operating Procedure No. 414(a), an unreported opinion from this Court may be cited for its persuasive value, but not as binding precedent. 210 Pa. Code §69.414(a).

well as the circumstances surrounding the claimant's separation from her holiday employment (the basis for the second notice). The claimant subsequently received a lump sum payment but nothing further. The claimant contacted the Service Center and was advised that everything was okay. However, during a follow-up call on March 28, 2012, the claimant learned that she would receive no further benefits in light of her failure to appeal the second notice of determination. The claimant immediately filed a late appeal of this notice of March 30, 2012. Following a hearing, a referee dismissed this appeal as untimely. The Board affirmed and denied *nunc pro tunc* relief, finding that the claimant was never misinformed or misled concerning her right, or the necessity, to appeal the second notice.

This Court reversed and remanded for further proceedings, concluding that the claimant had established a breakdown in the administrative process and filed her appeal within a short time of learning of the need to do so, thereby justifying *nunc pro tunc* relief. We noted that the claimant was placed in her position because of multiple mistakes by the Service Center, and "not being sufficiently sophisticated to understand the consequences of the repeated errors by the Service Center, did not understand the need to appeal the second notice of determination." (Slip op. at 12-13.)

Recently, in *Greene v. Unemployment Compensation Board of Review*, ___ A.3d ___ (Pa. Cmwlth., No. 2750 C.D. 2015, filed March 10, 2017), this Court discussed *Union Electric Corporation* and *Walsh* in the context of a case involving misrepresentations made by unemployment compensation (UC) representatives at a town hall meeting following the employer's announcement of a plant shut down. At that meeting, the UC representatives mistakenly advised the plant's employees that they could not collect unemployment compensation benefits while also collecting

9

severance pay. Specifically, the UC representatives failed to note the severance payment deduction only applied to severance agreements made after January 1, 2012, and the claimant's severance agreement preceded that date. Despite receiving this information, the claimant still filed a claim following his separation from his employer. In his questionnaire, the claimant inexplicably answered no when asked if his severance agreement existed prior to January 1, 2012.

As a result, the local service center issued a notice of determination advising the claimant that his severance pay was deductible and rendered him ineligible for benefits for a period of several months. The notice of determination further advised that the claimant had a right to appeal on or before July 8, 2015, but he did not appeal. However, after learning that other employees were receiving benefits and that his severance payments were not in fact deductible, the claimant filed an appeal on September 25, 2015. At a referee's hearing, the claimant testified that he relied on the information provided by the UC representatives at the town hall meeting in deciding not to appeal the notice of determination. The referee ultimately dismissed the appeal as untimely, noting that the claimant was not misinformed or misled regarding his right to appeal and the late appeal was not caused by fraud, an administrative breakdown, or non-negligent conduct. The Board affirmed.

This Court affirmed the Board, concluding that "not every misstatement by an apparently authoritative person will justify a *nunc pro tunc* appeal; rather, the misinformation must relate to the availability, timing or need for an appeal." (Slip op. at 18-19.) We stressed that the statement by the UC representatives occurred 18 months before the appeal period began to run, did not dissuade the claimant from filing a claim, and the UC Handbook contained accurate written information regarding deductibility of severance pay. We described the Supreme Court's decision

10

in *Union Electric Corporation* as consistent with our conclusion, as that case involved the County Board's improper extension of a statutory deadline for assessment appeals and related to a misunderstanding relating to the availability, timing, or need for an appeal. Thus, we held that it did not support relief under the facts here. Further, we noted that *Walsh* similarly involved confusion created by the Service Center regarding the claimant's need to appeal the second notice of determination.

We believe that the facts of the present case are akin to *Union Electric Corporation* and *Walsh*, and as such, consistent with *Greene*, and justify allowance of Claimant's appeal *nunc pro tunc*. In this case, Claimant has applied for and received benefits for the past seven years. As with every other year, Claimant received a letter from Employer advising him of the cessation of his seasonal position and including a specific call back date the following year, and he informed the Department of the same when filing his claim. The UC Handbook that was provided to Claimant specifically exempts an applicant from registering on the CareerLink system website registration when an applicant is advised, in writing, that he will return to work on a specific date. Claimant introduced a copy of the return to work letter he received from Employer and the relevant pages of the UC Handbook into evidence at the referee's hearing.

Moreover Claimant testified that contrary to all prior years, and inconsistent with the express language of the UC Handbook, the Department sent him letters stating that he had to register for the website, but with the proviso that registration was not required if he had "written notice from [his] employer of a specified date to return to work." (Record at Item No. 2.) Despite this exemption language in the letters and Claimant's reliance on same as in all past years, a notice of

11

determination was sent to Claimant advising that he was disqualified from receiving benefits.

Here, there is no dispute that Claimant was specifically exempted from the CareerLink system website registration requirement, as he had been in all prior years. There is no dispute that Claimant followed the same procedure as in all prior years. Nevertheless, unlike all preceding years, the Department sent Claimant errant letters stating that he was required to register, followed by an errant notice of determination disqualifying him from receiving benefits. Since at least 2011, the Department's policies had not changed, the Department took no action when Claimant followed the same course as he did here, and the terms of the UC Handbook consistently contained the same language noting that an employee need not register if they have a call back date from their employer. Indeed, the letters from the Department still contained the language exempting employees from registration if they had a call-back date.

In light of Claimant's reliance upon the Department's regular course of action in the prior years, the language in the UC Handbook, and the fact that Department's actions were in error in sending a notice of determination disqualifying Claimant, we find that this matter is similar to *Union Electric Corporation* and *Walsh*, and we conclude that the Department's actions constituted an administrative breakdown. Moreover, in light of these errant letters and notice of determination, coupled with the express language of the UC Handbook and Claimant's substantial past experience with filing claims with the Department and its ongoing course of conduct in accepting same, it was certainly reasonable for Claimant to be confused about the need for filing an appeal. Thus, under the clear analysis in *Greene,* Claimant should have been permitted to proceed with his appeal *nunc pro tunc*.

12

Accordingly, the order of the Board is vacated and the matter is remanded to the Board for consideration of Claimant's appeal *nunc pro tunc*.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy N. Prokop,                           :
                         Petitioner     :
                                            :
                                            :  No.  603 C.D. 2016
            v.     :
                                            :
Unemployment Compensation         :
Board of Review,                            :
                         Respondent     :

## *ORDER*

AND NOW, this 19th day of April, 2017, the order of the Unemployment Compensation Board of Review (Board), dated March 16, 2016, is hereby vacated.  The matter is remanded to the Board to consider the appeal of Jeremy N. Prokop *nunc pro tunc*.

      Jurisdiction relinquished.

                                            _____

                                            PATRICIA A. McCULLOUGH, Judge